## SHARMAN vs. MORTON.

1. Pleas of infancy; *non est factum*, and want of consideration in and to the note, or cause of action on which a judgment is rendered, are not proper replies to a suit on the Judgment.

2. A Judgment of a sister State, authenticated according to the Act of Congress, is conclusive on the defendant as to all questions that he could have been heard on in the Court when and before the Judgment was rendered.

3. But the Judgment does not preclude the defendant from pleading any special matter in avoidance of the Judgment, such as fraud in its rendition; want of notice, etc.

4. Being an Attorney in the cause, does not render a witness incompetent, he not having testified to any fact derived from his client, or during the existence and by reason of the relation of client and Attorney.

5. When a new trial is moved for, on the ground of newly discovered evidence, and the facts expected to be proved constituting the newly discovered evidence, are stated in the affidavit of the witness, are strong, and the verdict rather preponderates against the evidence anyhow, a new trial ought to be granted, if the newly discovered evidence would completely turn the scale.

6. When a suit is pending against two, one of whom is entitled to a good defence, and counsel is employed to file that defence, and a judgment is given, subsequently, on the agreement of the plaintiff's counsel, and the other defendant on indulgence to such other defendant, the agreement is a fraud on the other defendant, and doet not bind him.

7. When the presiding Judge, in the absence of the party for whom the motion for a new trial is made, has a doubt whether the additional evidence stated,

**ABSENCE OF COUNSEL NO CAUSE FOR MISTRIAL.** "The counsel may possibly have believed that the case would not be reached, or if reached, would not be tried until later in the term. This belief was not induced by any announcement of the court, or any consent or agreement of the opposite party or his counsel, and without some such cause, it afforded no ground for a new trial. 63 Ga. 428. **If counsel take the risk of having the case called and tried in his absence, this also is no ground for a new trial.** 69 Id. 767. Absence without leave, to attend trials of cases pending in other courts, is no ground for the continuance of causes. 66 Id. 344; 38 Id. 491; 10 Id. 85. **Nor is such absence to attend the legislature,** where counsel is a member of that body (31 Id. 35) or to meet "other engagements." 21 Id. 6. Upon each

is newly discovered. the Court ought to grant the Rule *nisi*, so as to give the party an opportunity to be heard on that subject.

8. When counsel for movant states, in his place, that the evidence is newly discovered, and the affidavit of the witness by whom the new facts are to be proved, states that he had not previously communicated the facts to him, this is sufficient evidence of its being newly discovered to authorize the Court to grant the new trial.

9. The absence of Counsel in attendance on the Legislature, and as a member thereof, is not a good ground of continuance.

Debt on a Judgment in Troup Superior Court. Tried before Judge BULL, at the November Term, 1859.

William R. Morton instituted an action, in the Inferior Court of Troup county, against James Sharman and Clement B. Sharman, composing a firm using the style of James Sharman & Co., to recover the amount of a judgment obtained in the Circuit Court of Russell county, Alabama, in favor of the said Morton against the said defendants.

Clement B. Sharman, being the only defendant served, filed his plea to said action, under oath alleging that he did not make the note (which was signed James Sharman & Co.), on which the judgment sued on was founded; and that he never had any notice of said suit, either by acknowledgment of service, or by being served with process by an officer; that at the time said note was given, he was not of lawful age, and only attained his majority on the 28th of July, 1853; and that he never made any promise, either by himself or any one else, by his authority, to the said Morton, or any one for him.

The case was carried to the Appeal Docket of the Superior Court of said county, by consent; and when the same was called for trial on the appeal, B. H. Bigham, Esq., counsel for the defendant, moved to continue the case, on the ground that B. H. Hill, Esq., was the leading counsel of the defendant; that although the said Bigham was first employed and had filed several of the pleas, yet he knew that the defendant looked almost exclusively, to Mr. Hill to give direction to the case; that, in his absence and without his knowledge, the case had been appealed by consent of Mr. Hill, who had not told him the defence on which he relied; that he felt unprepared to enter upon the defence without the presence of Mr. Hill; that he knew Mr. Hill left

of these several subjects, see 66 Id. 157; 61 Id. 419; 65 Id. 466; Poppell *v.* The State, 71 Ga. 276. Nor does it make any difference that the absent counsel has in his possession papers material to the case. Hook *v.* Teasley, 72 Ga. 901, and cases cited." Cotton States Life Ins. Co. *v.* Edwards, 74 Ga. 226.

**JUDGMENT OF SISTER STATE, HOW FAR CONCLUSIVE.** After commenting on the right to show that the last domicile of the testator was not in the county where the will was probated, Jackson, C. J.,

the Court believing that the case was passed for the term, because just previous to his leaving the Court, he had called his attention to other cases in which they were mutually interested, and the conference closed by a remark that he could then return to Milledgeville, satisfied that none of his business would suffer, as nothing in which he was interested would come up, and that the showing for a continuance was not made for delay (this being the first term of the case on the appeal), but to secure the services of Mr. Hill. The presiding Judge qualified this part of the showing by a certificate, that the Court had been informed by Mr. Hill that he should leave that case to be conducted by Mr. Bigham, as the adverse counsel had refused to continue it, and that the Judge knew that Mr. Hill expected it to be tried; that he had no leave of absence, and that it had been the invariable practice of the Coweta Circuit not to allow the continuance of any cause for absence of counsel, except for Providential cause, or necessary attendance on the Supreme Court, which practice was well known to the Bar of the circuit. Counsel for the defendant stated, as a further showing for a continuance, that the answers of Thomas J. Stevens to interrogatories taken out in said case had just been returned by mail, and were defectively executed, and the questions were not fully answered, and that the object of the testimony was to prove that the defendant had no notice of the suit in which the judgment sued on was rendered. Counsel for the plaintiff waived all exceptions to the execution of the interrogatories, and the presiding Judge, upon examination, deeming the interrogatories fully answered, overruled the motion for a continuance, and ordered the trial to proceed, to which counsel for defendant excepted.

Counsel for the plaintiff then moved to strike out the plea of *non est factum* to the note on which the suit in Alabama was founded, and the plea of infancy at the time the note was made. The Court held that the pleas were not good as defences (in themselves), against a judgment, but allowed them to stand as *special pleas of facts* tending to show that the defendant had no legal notice of the suit, or that the judgment was obtained by fraud; and the defendant excepted.

Counsel for defendant proposed to file the plea of *nul tiel record,* and also a plea, under oath, denying the partnership between James S. Sharman and the defendant, Clement B.

says: "In my judgment the refusal to hear evidence is error, because, in my judgment, under the authorities read, the Alabama probate judgment was not conclusive on the Georgia administrator, but the judgment was void, if Montgomery was not, but Columbus was, Mrs. Merrill's last domicile, and that was open to inquiry. Our own reports abound with the doctrine, 5 Ga. 274, 497; 48 Ib. 50; 31 Ib. 34, which was upon an Alabama judgment." Thomas *v.* Morrisett, 76 Ga. 399.

Sharman. The Court allowed the first plea, but refused the motion to file the other as a legal defence, but allowed it for the same purpose as the pleas of *non est factum* and infancy aforesaid; and the defendant excepted.

Counsel for the plaintiff then offered, in evidence, an exemplification of the record of the suit and judgment in Alabama; to the introduction of which counsel for defendant objected, on the ground that the exemplification was not sufficiently and properly authenticated, the Judge certifying that the attestation was in "proper form," when it should have been, "due form of law;" also, that the exemplification appeared to be mutilated and altered, and incomplete; also, that it showed that service was acknwledged, and proof of the execution of the acknowledgment was not made. The Court overruled the objections and admitted the exemplification; and the defendant excepted.

The plaintiff then closed his case.

The defendant then introduced the following testimony, to wit:

A certificate made by the Judge of the Probate Court of Russell county, Alabama, stating that, after due and thorough search of the records of his office, he could find no record of any evidence of a partnership between James Sharman and Clement B. Sharman, either by the firm name of James Sharman & Co., or any other firm name.

Also, an exemplification from the records of the Orphan's Court of Chambers county, Alabama, showing that the said Clement B. Sharman was a minor on the 27th of February, 1851, the date of the note on which the suit in Alabama was founded; and, also, that he was a minor on the 16th of March, 1852, the date of the acknowledgment of service in said Alabama suit, in which the judgment sued on, in this case, was rendered.

Also, the answers of James Sharman to interrogatories taken out in said case, in which he testifies that the defendant, Clement B. Sharman, was born on the 28th of July, 1832.

The defendant also offered, in evidence, the answer of said James Sharman to one of the interrogatories, which answer was as follows, to wit: "I heard McCoy, plaintiff's attorney, say that he should not look to Clement B. Sharman for the judgment sued on. I had a conversation with McCoy

about eighteen months ago, and I never heard of his being disconnected with the case." To this answer, counsel of the plaintiff objected, and the Court ruled out the answer; and defendant excepted.

The defendant also introduced the answers of Robert J. Sharman, John R. Sharman, Richard Thurmond, and Harriet Thurmond, taken by commission, all of whom testified that they are members of the same family of defendant, being his brothers and sisters and brother-in-law; and from the family record, the defendant was born the 28th of July, 1832.

The defendant also read the answers of Thomas J. Stevens, to interrogatories, who testified that he knew the handwriting of James Sharman, but not of the defendant; that he had examined the original records of the suit, in which the judgment sued on was rendered, and service appears to be acknowledged by James Sharman, alone, in his own handwriting, and that the name of the defendant, Clement B. Sharman, does not appear upon the records of said case, in the acknowledgment of service.

The defendant introduced Joseph Boyd as a witness, who testified that he was acquainted with the handwriting of the defendant, but is not acquainted with the handwriting of James Sharman; that he examined, particularly, the papers of file in the Circuit Court of Russell county, Alabama, relative to the case in which the judgment sued on was rendered, and does not think that the acknowledgment of service in said case is in the handwriting of Clement B. Sharman. The signature of both names to the acknowledgment of service is in the same handwriting, being "James Sharman; C. B. Sharman"; that he first knew C. B. Sharman in March, 1852, and knows that he moved from Alabama to Georgia as early as the year 1852, and thinks it may have been as early as March of that year.

John W. McGhee testified: That C. B. Sharman married his daughter, and has resided in Georgia from July, 1852, and was back and forth to his house frequently before that time.

Defendant then closed his testimony.

The plaintiff, in rebuttal, offered in evidence the answers of L. F. McCoy to interrogatories, taken in said case, who testified: That he knew the firm of James Sharman & Co.; it was composed of James Sharman and Clement B. Sharman;

that he was plaintiff's attorney in the suit in Alabama, in which the judgment sued on was rendered—that process in said case was served by an acknowledgment of service and waiver of a copy on the back of the writ, to which the defendants signed their names in my presence; that Morton had no other suit against the defendants at that or any other term of the Circuit Court of Russell county, Alabama, and that he, as attorney, commenced no other suit in favor of said Morton against said defendants, but did commence other suits against them in favor of Wiley, Banks & Co., and the defendants acknowledged service, as aforesaid; Clement B. Sharman pleaded infancy to said suit in favor of Morton, and that, previous to his filing the plea, the witness did not know that he was a minor, except from rumor; that he was a married man, and a business member of said firm of James Sharman & Co.; witness did not hear that he was a minor until after the acknowledgment of service; that, upon motion to the Court, a guardian *ad-litem* was appointed to defend him; finally, it was agreed by the plaintiff's counsel and the defendants, that a verdict of the jury should be rendered against them, with a stay of execution for twelve months; that there was no proof of C. B. Sharman's infancy before the jury, and if he was a minor when the acknowledgment of service was made, the witness did not know it, except from rumor; that the plaintiff paid the witness his fee of one hundred dollars, and his connection with the case ceased, and the plaintiff employed other counsel; the witness has nothing to do with the case, and has no interest in it, except a desire, created by his former connection with the case, to see the plaintiff succeed in getting his money.

Counsel for defendant objected to all of said testimony of McCoy, on the ground that the witness was attorney for the plaintiff in the case.

The Court overruled the objection and admitted the testimony, and defendant excepted.

It was agreed, that the Code of Alabama should be used as evidence by both parties.

The evidence being closed, the Court charged the jury, amongst other things:

That, in a suit on a judgment at law, whether of this State, or any one of the United States, the plaintiff makes out his case *prima facie* by introducing in evidence a prop-

erly certified exemplification of the record of the judgment; that it is a general principle, that a judgment is conclusive between the parties to it; that the very object of requiring Courts to keep records of their proceedings, is, that the records may be a perpetual evidence of the facts determined between the parties. When a party has legal notice that a suit is pending against him, either by legal service of a proper officer, or by acknowledgment of service, he is bound to make all his defences before final judgment is had, and if he does not, but slumbers over his rights, he is forever concluded by the judgment; that the law favors the vigilant, and not the sleeping; that it is the policy of the law that there should be an end to litigation; so that, if a man is sued upon a note which he never made or authorized to be made—or if he was an infant at the time of the making of the note—or if he have any other legal defence, he must avail himself of it before judgment, or he can not avail himself of it afterwards. If the note sued on is not his act and deed, he must plead it, and throw upon the plaintiff the burden of proving it; otherwise, if he has legal notice of the suit, and does not make his defence, he can take no advantage of it afterwards. If he is an infant at the time of giving his note, it is his privilege, by himself or guardian, to plead it; but he is not bound to plead it—and if he does not and suffers judgment to go against him, after he is of age, he is forever concluded by it. These are the general rules of law, but subject, like all other general rules, to various exceptions:

1st. Where the defendant has had no legal notice of the suit against him, either by legal service, acknowledgment of service, or waiver of service, by pleading to the merits of the cause, he is not bound by the judgment—nay, the judgment itself is a nullity, whether the original cause of action be just or not. On the other hand, if he had legal notice, the judgment binds him, and no enquiry is allowable into the merits of the original cause of action.

2d. So, if a judgment is obtained by fraud against a defendant, he is not concluded by it, and may defend himself in a suit on the judgment, by showing, either that there is no such record, or by showing that he had no legal notice, or that it was obtained by fraud. For this purpose, evidence has been admitted upon the questions of infancy and partnership, as circumstances tending to show, either that the party

had no notice of the suit, or that the judgment was procured against him by fraud, for the evidence contained in the record, of the fact of the defendant's acknowledgment of service, may be rebutted by testimony *ali unde*. If you believe, from the testimony, that the defendant had legal notice of the pendency of this action, and that he became of age before the judgment, unless the judgment was fraudulently obtained, you will find for the plaintiff the amount of the judgment entered up, with interest on the principal sum, at eight per cent., and costs of suit. If, on the contrary, you believe that the defendant was not legally notified of the suit, or that the judgment was procured by the fraudulent contrivances, either of the plaintiff or James Sharman, the co-defendant in the record, you will find for the defendant, with cost of suit.

To this charge, counsel for defendant excepted.

The jury returned a verdict in favor of the plaintiff, for "One thousand and fifty-one dollars, with interest, at eight per cent., from date of the judgment in Alabama, and cost of suit."

Counsel for the defendant then moved for a new trial in said case on the following grounds:

1st. Because the Court erred in the decisions hereinbefore stated, as to the pleas of the defendant.

2d. Because the Court erred in overruling the objections to the exemplification of the record from Alabama, and admitting the same in evidence.

3d. Because the Court erred in sustaining the objections of plaintiff's counsel, to the testimony of James Sharman as to the declarations and sayings of L. F. McCoy.

4th. Because the Court erred in overruling the objections of defendant's counsel to the testimony of L. F. McCoy, and in admitting the same.

5th. Because the Court erred in charging the jury as hereinbefore set forth.

6th. Because the Court erred in refusing to give the following charge to the jury, which was requested by the defendant's counsel, to wit:

That the witness, McCoy, swearing to the filing of a plea in the case, and the exemplification showing none such, and no order to the effect that the plea might be withdrawn, either the record is incomplete, or Mc-

Coy is incorrect in his statement of facts, and that it will go to the credibility either of the record offered, or of McCoy. If the credibility of the record is impeached, so as to satisfy the jury that the exemplification tendered is incomplete or mutilated, then the plaintiff has failed to make out his case. If McCoy's credibility is impeached by the conflict, then the jury are bound to believe the witnesses relative to the acknowledgment of service. If the jury are satisfied that the note sued on was made when the defendant was a minor, for merchandize, and in trade, that the contract was void, especially if it is not made satisfactorily to appear that he got value for the note. That an infant can not bind himself in a contract of mercantile partnership, and can not bind himself by any acknowledgment to a writ for the collection of debts, contracted for such partnership. That no valid judgment can be obtained, at common law, against an infant, in Alabama, unless he is defended by a guardian, appointed by the Court, and that even the appearance of an infant in a case does not bind him; the reason being found in the Code of Alabama, and in the fact, that the infant is of tender years, and is not well acquainted with his rights. That, if the jury are of the opinion, that the paper, produced as an exemplification of the judgment, is imperfect, incomplete, or mutilated, then it does not give sufficient evidence of the judgment, and in that event the plaintiff fails to make out his case. That, if an infant is sued at common law, in Alabama, and, pending the litigation (not being represented by any guardian), moves away from the State, and afterwards becomes of age, he is not bound to return to the jurisdiction and plead to the suit; and when he does not do so, the judgment does not conclude him.

7th. Because the jury found contrary to the evidence and the charge of the Court.

8th. Because the Court erred in overruling the motion to continue the case, made as aforesaid.

9th. Because, since the trial of said case, the defendant has ascertained that he can prove by B. H. Baker, that

in the year 1853 he was employed by James Sharman to defend, particularly for C. B. Sharman, the suit in Alabama, in which the judgment sued on was rendered, on the ground, that the said C. B. Sharman was under age at the time the note sued in said action, in Alabama, was executed; and that a plea to that effect was filed and would have been made available, but for a compromise for indulgence, made by James Sharman; that he was employed by James Sharman, and never saw or conversed with C. B. Sharman in relation to the case; that, to the best recollection of said Baker, C. B. Sharman was not at Court when the case was tried; that he has examined the signatures to the original suit in said case, and is satisfied said signatures are in the handwriting of James Sharman, and not in that of C. B. Sharman; that he has seen James Sharman write, frequently, and thinks he is acquainted with his handwriting.

Also, that he can prove by Miles Hill: That, since the trial of this case, he, the said Hill, went to Russell county, Alabama, and examined the records of the Circuit Court, and found thereon cases against James Sharman & Co., in favor of Howard Manufacturing Company, and J. S. & L. Bowie, and Condict & Co., all of which were discontinued as to C. B. Sharman, except the last mentioned case, in which James Sharman was appointed guardian *ad litem* of C. B. Sharman; that, although he did not examine the records with particular reference thereto, yet he saw no plea of infancy, or order for withdrawing such plea, or an order appointing a guardian *ad litem* in the case in favor of Morton; that he looked at the acknowledgment of service and signatures thereto, and both are in the same handwriting.

Also, that he can prove, by the records of said Circuit Court of Alabama, that there was a contest between the *fi. fa.* issued from the judgment sued on, and others, for the distribution of two thousand and eighteen dollars and seventy-five cents, in the sheriff's hands, and that the Court ordered any balance of said sum, after paying off other liens, to be paid to the *fi. fa.* in favor of Morton; and that he expects to prove

that there was a balance left, and that it was paid to the Morton fi. fa.

The facts of this last ground are verified by the affidavits of Miles H. Hill and B. H. Baker, and by the certificate of the clerk of said Circuit Court of Russell county, Alabama.

The defendant, also, files an affidavit, which was not before the presiding Judge when the motion for a new trial was heard, but which was before him when the bill of exceptions in this case was signed and certified, in which affidavit the defendant states:

"That, at the time of the trial, he did not know of the existence of the facts verified by said affidavits and certificate; that he has used all diligence to obtain evidence to establish his defence; that he has been, and sent others, to Russell county, to search for evidence, and that, if he had known that the said evidence was attainable, he would have availed himself of the benefit of it on the trial; that he believes he can obtain evidence in time for another trial of this case, showing that the judgment sued on is invalid and totally void as to him; that he has also learned, by hearsay, and expects to prove, that the record, exemplified and read in evidence in this case, was incomplete, and made so by the agency of L. F. McCoy, the witness who testified against him in this case."

The presiding Judge overruled the motion for a new trial, and this decision constitutes the error complained of in the record.

B. H. HILL & BIGHAM, for the plaintiff in error.

FERRELL & BULL, for the defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

1. This was a suit upon a judgment from the Circuit Court of Alabama. To this suit, the defendant plead infancy at the time of the making of the note; that he did not make the note, and that he was not a partner of the firm of James Sharman & Co., and had no interest in the note which was the subject of that suit. The Court held that these pleas were not proper replies to that action, and we concur with the Court in such ruling. Section 1, of the 4th Article of the

Constitution of the United States, provides, that "Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State, and that Congress may, by general laws, prescribe the manner in which such Acts, records, and judicial proceedings shall be proved, and the effect thereof." And Congress, by an Act of 24th May, 1790 (*Cobb*, 275), having provided for the manner of authentication of such judicial proceedings, and so authenticated, that they "Shall have such faith and credit given to them in every Court within the United States, as they have by law or usage in the Courts of the State from whence the said records are or shall be taken."

2. The record of this judgment, having been authenticated according to the Act of Congress, the judgment was as conclusive against the defendant in the Courts of this State, as it would have been in the State of Alabama. If the defendant had notice of that suit, he was concluded as to all questions made by these pleas. *Mills vs. Duryee, 7 Cranch,* 481. *Hampton vs. McConnell, 3 Whea.* 234.

3. The defendant was at liberty to plead any special plea that would have avoided the judgment, such as that he had no notice of the suit, or that it was obtained fraudulently— *Hunnivay vs. Stillman. 4 Cow. Rep.* 292—and so the Court below held—

4. The fact, "That the witness was an attorney for the plaintiff, in the suit in Alabama, in which the judgment was obtained, did not render him incompetent to testify in the cause, and he testified to no fact that he acquired from his client, or during the existence and by reason of the relation of client and attorney."

5. The newly discovered evidence, on which the defendant asked for a new trial, was very strong. Baker, the witness by whom the facts are expected to be proved, states in his affidavit, that he was employed as an attorney by James Sharman, the other partner, to file the plea of infancy for this defendant to the suit in Alabama, and that he did file that plea to that suit. That he never saw this defendant, or conversed with him on the subject; that this defendant was not at the Court at which the case was tried, in Alabama. That the plea of infancy, filed by him, would have defeated the suit as to this defendant, but for a compromise, made by James Sharman with the plaintiff, "to give him indulgence."

If this is true, and the plea was withdrawn, in consequence of the agreement of the plaintiff, to indulge James Sharman, to which this defendant was not a party, this is such a fraud on the defendant as will vitiate that judgment as to him. The judgment was not that of the Court, but of the plaintiff and James Sharman, or rather by their consent. This testimony serves another purpose; that is, to repel or rather explain the presumption arising from this clause of McCoy's answer. "Finally, it was agreed by plaintiff's counsel and the defendants, that a verdict of the jury should be taken against them, with a stay of the execution of twelve months." Baker's testimony shows that Clement B. Sharman was no party to such agreement, although McCoy's language might have and possibly did create a different impression. The expression, whether accidentally or from design, was rather equivocal.

6. We are rather inclined to the opinion that the verdict is against the weight of the evidence any way. Doubtful, as it was, we think this evidence would have completely turned the scale, had it been in.

7. The only doubt about this ground is, whether the evidence was newly discovered. If the Court below had any doubt on this subject, the rule *nisi* for a new trial ought at least to have been allowed, so as to give the party time to file the additional affidavit.

8. But, we think, the new trial ought to have been granted. The statement of counsel, in his plea, was very strong; this, and the statement of the witness in the affidavit, that he had not communicated these facts to this defendant previously, were sufficient to warrant the Court in the conclusion that the evidence was newly discovered; so a new trial must be granted on this ground.

9. There is one other point, which I omitted to notice in the proper place, and that was the motion to continue, on account of the absence of Mr. Hill, one of the counsel, and the leading counsel, too, of defendant, from the Court, in attendance on the Legislature, as a member thereof. We think, the Court properly overruled the motion. This was not a ground of continuance. Counsel, who have engaged to perform services for a client, to prosecute or defend his suit, must not assume new duties and relations inconsistent with the duty growing out of such engagement, and should he do so, the client must get new counsel, or do without him; his

absence in attendance upon his new duties will not work a continuance of the cause; such has not been the practice of the Courts within our knowledge.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be reversed, upon the ground that the Court erred in refusing the motion for a new trial. The Court should have granted a new trial on account of the newly-discovered evidence.